Timothy D. **LUCERO**, Appellant–
Plaintiff Below,

v.

**LUTHERAN UNIVERSITY AS-
SOCIATION, INC.,** Appel-
lee–Defendant Below.

No. 64A03–9301–CV–14.

Court of Appeals of Indiana,
Third District.

Oct. 14, 1993.

Hawk P.C. Kautz, James R. Oates, Merrillville, for appellant-plaintiff.

Mark E. Schmidtke, Heidi B. Jark, Hoeppner, Wagner & Evans, Valparaiso, for appellee-defendant.

STATON, Judge.

On January 25, 1990, Timothy Lucero slipped and fell on the icy stairs outside Heritage Hall on the campus of Lutheran University Association, Inc., (doing business as Valparaiso University, hereinafter referred to as the "University"). Lucero sued the University, and a jury rendered a verdict for Lucero in the amount of $240,-

000.00.[1] The University filed a Motion to Correct Error, pursuant to Ind. Trial Rule 59(A)(2), and alleged, *inter alia,* the damages were excessive. On September 23, 1992, the trial court ruled on the Motion to Correct Error and granted a new trial. On October 7, 1992, the trial court supplemented its order on the motion to correct errors. Lucero appeals and presents two issues[2] for our review which we restate as follows:

    I.  Whether the trial court, in granting the motion to correct error, complied with the requirements of Trial Rule 59(J)(7).

    II.  Whether the trial court correctly determined the verdict was against the weight of the evidence.

We affirm.

## I.

### *Motion to Correct Error*

■ Lucero argues the trial court failed to comply with T.R. 59(J)(7) in three respects: (1) the trial court failed to explain why judgment was not entered on the evidence; (2) the trial court failed to provide a recitation of the supporting and opposing evidence on each issue upon which a new trial was granted; and (3) the order of the trial court does not reflect the arduous and time-consuming analysis required by T.R. 59(J)(7). T.R. 59(J)(7) provides in relevant part:

> When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting

and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence.

The grant of a new trial is given a strong presumption of correctness. *Brown v. Conrad* (1988), Ind.App., 531 N.E.2d 1190, 1192, *trans. denied.*

■ Lucero first argues the trial court failed to make findings showing "why judgment was not entered upon the evidence." T.R. 59(J)(7). We disagree. The trial court found the verdict was totally against the weight of the evidence. In the "Supplemental Order on the Court's Ruling on Motion to Correct Error", Finding Number Seven states "The only evidence as to damages which even conceivably could have been caused by the accident (i.e., a sore knee, sore neck, and discomfort in his lower back) would support only a small verdict for [Lucero]." Record, p. 299. The trial court determined that Lucero was entitled to some recovery for his fall on the icy stairs and, therefore, the trial court could not enter judgment on the evidence. This finding satisfies T.R. 59(J)(7).

■ Lucero secondly argues the trial court overturned the jury verdict with a naked statement that the verdict was erroneous. *State v. White* (1985), Ind., 474 N.E.2d 995, 1000. Particularly, Lucero argues the trial court failed to provide a recitation of the "supporting and opposing evidence to each issue upon which a new trial is granted." T.R. 59(J)(7). In its supplemental order, the trial court provided the following recitation of evidence in support of the grant of a new trial:

> The Court hereby enters the following findings of fact in support of its Ruling on Motion to Correct Error pursuant to Indiana Trial Rule 59(J)(7):

---

**1.** The jury found the total damages were $300,000.00. The jury found the University was eighty percent at fault for Lucero's injuries and Lucero was twenty percent at fault for his injuries.

**2.** The University raises two issues in cross-appeal; however, because we conclude the trial court properly granted the new trial, we need not address these issues.

1. Plaintiff seeks damages following a fall on defendant's property on January 25, 1990. According to the evidence, plaintiff sustained minor injuries, including discomfort in his lower back. Plaintiff admitted that he [sic] never treated for any of his alleged injuries and, in fact, he even declined treatment recommended by his doctors. [Record, pp. 587–592]. According to plaintiff, he incurred a total of $1200–1300 in medical bills, virtually all of which were for diagnostic purposes. [Record, p. 573].

2. The main thrust of plaintiff's case was his allegation that he was no longer able to participate in military combat activities. Plaintiff opined that he was 'not medically qualified', but offered no evidence as to why. [Record, p. 574].

3. The *only* evidence submitted at trial as to *why* his physical condition might not allow him to participate in military combat activities was the testimony of his physician, Dr. Paul Alvarez.

4. Dr. Alvarez testified that plaintiff had spondylolysis and a degenerative back condition. Dr. Alvarez stated that both of these conditions existed *before* the accident at Valparaiso University and that *neither* of these conditions resulted from the accident. [Record, p. 77 (spondylolysis not caused by the accident) and pp. 83–84 (degenerative back condition not caused by accident).] Dr. Alvarez testified that his recommendation that plaintiff not participate in military activities had nothing to do with the accident:

Q: If Mr. Lucero had visited you without this history of an alleged fall, okay, and presented to you the x-rays and the bone scan and CAT scan that you observed, would you also be of the opinion that he should not engage in the strenuous activities such as parachuting or other military related activities?

A: Yes.

Q: So really the fact that he had a fall had nothing to do with that?

A: Basically, no.

[Record, p. 90.]

5. Later in his testimony, Dr. Alvarez reiterated that plaintiff's alleged inability to participate in military activities was a result of plaintiff's preexisting spondylolysis and degenerative back conditions and that it was not caused by the accident:

Q: Mr. Oates asked you about running, riding around in tanks or other military related activities or something one would expect a combat military person to be engaged in. You're representing that Mr. Lucero not engage in those as a result of the fact that he has this spondylolysis problem; is that correct?

A: That and the degeneration of the lower spine in general; correct.

Q: Okay. It's got nothing to do with his fall that he allegedly had on January 25, 1990, does it?

A: If he came to the office complaining of lower back pain and did not have a fall, I would still say not to do it.

Q: Okay.

A: He wouldn't come to me if he wasn't having any symptoms, but if I saw his x-rays and he said 'I have no symptoms but I would like to do this, would you allow me to?' I would say, 'No. It's in your best interest not to do that, because you may have set it off by having one of these ...'

Q: So if he came in say for a physical examination and x-rays were taken and you discovered that he had this degenerative disease problem and spondylolysis problem, none of which were related to his fall, then it would also be your recommendation that he not ride in tanks, that he not run, that he not parachute, etc.?

A: Yes.

[Record, pp. 464–465.]

6. Dr. Alvarez's testimony was undisputed: there was no causal link between the accident and plaintiff's ability to participate in the military. Dr. Lonnie Ailes confirmed Dr. Alvarez's opinions by stating that any restrictions from parachute jumping would be the result of the potential for harm as a result of the spondylo-

lysis condition. [Record, pp. 485–487.] Plaintiff submitted no evidence to support any causal link between the accident and his ability to participate in the military.

\*    \*    \*    \*    \*    \*

Record, pp. 309–12.

Because the evidence showed Lucero's actual medical expenses resulting from his fall totaled between $1,200.00 and $1,300.00, the trial court found the $240,-000.00 in damages "shockingly outrageous and excessive". Record, p. 295. The trial court also found Lucero failed to produce any evidence that the fall was the proximate cause of the damages to Lucero's military career. The trial court made the required findings and did not overturn the verdict with a naked statement that the verdict was erroneous.

 Lucero thirdly argues the order does not reflect the "arduous and time consuming analysis" required by T.R. 59(J)(7). *See White, supra.* However, the purpose of the specific findings of fact under T.R. 59(J)(7) is to facilitate appellate review. *Brown, supra,* at 1193. We conclude that these findings provide a sufficient factual basis to facilitate appellate review of this case.

## II.

### *New Trial*

Lucero next argues the trial court erred when it determined the verdict was against the weight of the evidence and granted the new trial. In reviewing the decision to grant a new trial, an appellate court must give such findings a strong presumption of correctness. The findings and conclusions made by the trial court are to be liberally construed and will not be overturned unless they are clearly erroneous. *Wedmore v. Jordan Motors, Inc.* (1992), Ind.App., 589 N.E.2d 1180, 1183, *trans. denied.* For Lucero to recover on a theory of negligence, he was required to establish that the breach of duty by the University was the proximate cause of his injury or loss for which the damages are

sought. *Flott v. Cates* (1988), Ind.App., 528 N.E.2d 847, 848.

Lucero slipped on the icy stairs and sustained some injury. In the course of the medical care Lucero sought as a result of this fall, two preexisting asymptomatic medical conditions were diagnosed. Upon diagnosis with these conditions, Lucero's doctors determined Lucero was no longer medically qualified to serve in the United States Army. These preexisting conditions and not Lucero's fall on the icy stairs were the proximate cause for Lucero's change in medical status. *See, Palace Bar, Inc. v. Fearnot* (1978), 269 Ind. 405, 381 N.E.2d 858, 864–65. Because Lucero failed to prove his fall was the proximate cause for the damages related to his military career, we conclude the trial court did not abuse its discretion in determining the verdict was against the weight of the evidence and granting a new trial.

We affirm.

GARRARD and NAJAM, JJ., concur.