## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 16 2017, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Brian J. Hunt
The Hunt Law Group, LLC
Chicago, Illinois

Lonnie D. Johnson
Samantha A. Huettner
Clendening Johnson & Bohrer, P.C.
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Robert A. Montgomery
Law Offices of Robert
Montgomery
Munster, Indiana

Bradley Cosgrove
Clifford Law Offices, P.C.
Chicago, Illinois

# IN THE
# COURT OF APPEALS OF INDIANA

Marten Transport, Ltd., a Foreign Corporation, and Caroline Hurst,

*Appellants-Defendants,*

v.

Kathleen E. Lucas,

*Appellee-Plaintiff*

August 16, 2017

Court of Appeals Case No. 45A03-1612-CT-2937

Appeal from the Lake Superior Court

The Honorable Bruce D. Parent, Judge

Trial Court Cause No. 45D04-1301-CT-12

**Crone, Judge.**

# Case Summary

On a snowy, icy interstate Kathleen E. Lucas lost control of her vehicle and was hit by a tractor trailer driven by Marten Transport, Ltd., employee Caroline Hurst (collectively "Appellants"). Lucas suffered severe injuries and filed a personal injury claim against Appellants, alleging that Hurst's negligent driving caused her injuries. A jury found that Lucas and Hurst were each fifty percent at fault in causing the collision and determined that Lucas's damages were $5 million. The trial court entered a judgment in favor of Lucas and against Appellants and awarded Lucas $2.5 million. Appellants filed a motion to correct error ("Motion to Correct Error") on four separate issues, which the trial court denied.

Appellants now appeal, raising the following claims of error: (1) the trial court erred by denying their summary judgment motion ("Summary Judgment Motion"); (2) the trial court abused its discretion by denying their Motion to Correct Error regarding the denial of their motion to bifurcate the trial on the issues of liability and damages ("Motion to Bifurcate"); (3) the trial court abused its discretion by denying their motion to limit the opinion of Lucas's liability expert Thomas Green ("Motion to Limit Green's Opinion"); (4) the trial court abused its discretion by denying their Motion to Correct Error regarding the denial of their motion to limit the testimony of Lucas's physician Dr. Neil Allen ("Motion to Limit Dr. Allen's Testimony"); (5) the trial court abused its discretion by refusing two of their tendered jury instructions; (6) the trial court abused its discretion by denying their Motion to Correct Error

regarding the jury's allocation of fault; and (7) the trial court abused its discretion by denying their Motion to Correct Error regarding the jury's determination of Lucas's damages.

[3] Finding no error, we affirm.[1]

## Facts and Procedural History

[4] On the morning of January 11, 2011, Lucas, a twenty-year-old college student, was driving an Acura sedan southbound on I-65 near exit 249 in Lake County with her friend Lauren Ward as a passenger. It was windy and intermittently snowing, and the road was icy and covered with patches of snow. The speed limit was sixty-five miles per hour. Tr. Vol. 3 at 23. Lucas was driving forty-five to fifty miles per hour in the left lane. She saw a car coming up behind her in the left lane and moved slowly into the right lane to allow the car to pass.

[5] As Lucas was changing lanes, Hurst was driving a tractor trailer in the right lane approximately a "football field" length behind Lucas. Tr. Vol. 4 at 104. Hurst was going forty-eight to fifty miles per hour. Hurst had been taught to reduce speed to one-half the speed limit in snowy conditions and to one-third in icy conditions. Tr. Vol. 2 at 117-18, 120.

[6] After Lucas moved into the right lane, the Acura "started fishtailing" but stayed in the right-hand lane. Tr. Vol. 4 at 104-05. The Acura spun perpendicular to

---

[1] Given that we find no error, we need not address Appellants' argument that the cumulative effect of the trial court's errors requires reversal.

the road with the driver's side facing north and came to a stop in the right lane. Ward saw Hurst's tractor trailer coming toward them, and it did not appear to be slowing down or moving into the left lane or toward the shoulder on the right. Approximately fifteen to twenty seconds after the Acura started fishtailing, the tractor trailer crashed into the driver's side door.

[7] The tractor trailer had an electronic control module ("ECM"), which recorded the vehicle's speed and other data every second going back a minute and forty-four seconds before the vehicle stopped. Tr. Vol. 3 at 13. The ECM data showed that the tractor trailer's speed at impact was between twenty-three and thirty-six miles per hour. *Id*. at 82. The ECM data indicated the tractor trailer's speed at different times before the collision as follows: fifty miles per hour one minute before impact; forty-eight miles per hour twenty seconds before impact; forty-nine miles per hour fifteen seconds before impact; and fifty miles per hour twelve seconds before impact. *Id*. at 14, 17-18. The ECM also showed that Hurst did not take her foot off the gas pedal until ten seconds before impact and that she did not apply the brakes until a second or two before impact. *Id*. at 18-19, 34-35.

[8] Because of the accident, Lucas suffered multiple and permanent injuries, including several fractures to her pelvis, a lacerated bladder, three broken ribs, a collapsed lung, scalp lacerations, and a concussion. Initially, she was in a coma and not expected to live. She was put on a ventilator in the intensive care unit, where she remained for seven days. In total, she was hospitalized for ten days, although she did not require surgery. When she was discharged from the

hospital, she was unable to put any weight on her fractured pelvis, could not walk, and was admitted to a physical rehabilitation facility for two months. She had to use a wheelchair while she learned how to walk again and underwent physical therapy.[2] She continues to experience chronic pain in her hips and back and has not had a single day where she was not in pain. She also has balance problems and cannot sit or stand for long periods of time.

[9] Lucas also suffered debilitating migraines and headaches, and in September 2012, she began treatment with Dr. Allen, a neurologist. *Id.* at 159. Lucas continued regular biannual checkups with Dr. Allen. *Id.* At the time of trial, Lucas continued to suffer from headaches and migraines, and was taking four medications for her condition. *Id.* at 197. In addition, after the accident, Lucas experienced cognitive impairment such as trouble concentrating, thinking clearly, and remembering things. In Dr. Allen's opinion, the migraines, headaches, and cognitive impairment were caused by the accident. Tr. Vol. 4 at 20. He believes that Lucas will continue to suffer from headaches and migraines for the rest of her life. Tr. Vol. 3 at 191.

[10] Lucas's physical injuries and cognitive impairment affected many areas of her life. Before the accident, Lucas was an A student at Saint Louis University majoring in educational studies and music, and she played both the piano and the violin. After the accident, she had to take a semester off. Upon her return

---

[2] Lucas avers that she underwent a year of physical therapy, but the pages of the transcript she cites do not indicate how long she was in physical therapy.

to college, her grades fell to Cs and Bs, and she had to change her major in music to a minor. However, she was able to graduate with a grade-point average of 3.4 and went on to earn a master's degree in jurisprudence from Loyola University Chicago. Lucas had wanted to become an attorney since she was eleven years old. She took the standardized law school entrance exam twice, but her scores were poor, and her applications to law schools were rejected. At the time of trial, Lucas lived alone and worked as a paralegal for a law firm in South Carolina. She moved from Chicago to South Carolina because her parents lived there and would be able to help her.

[11] In January 2013, Lucas filed a negligence action against Appellants, alleging that Hurst negligently drove the tractor trailer by driving too fast, failing to reduce her speed to avoid the collision, and failing to keep a proper lookout, and that her negligence caused her tractor trailer to collide with Lucas's vehicle causing physical injuries, great pain and suffering, lost wages, loss of normal life, future medical bills, and other damages. Appellants' App. Vol. 2 at 26-28. Appellants filed an answer denying all material allegations and alleged affirmative defenses of contributory negligence and that Lucas's negligence was the sole proximate cause of her injuries and damages. *Id*. at 32-34.

[12] In September 2015, Appellants filed their Summary Judgment Motion. Appellants argued that there was no breach of duty because Hurst was not driving too fast for the road conditions and did not negligently operate her vehicle and Lucas's recovery was barred by Indiana's comparative fault system. Following a hearing, in March 2016, the trial court issued an order denying

their Summary Judgment Motion. The trial court found that Appellants failed to designate evidence to establish a prima facie case that there was no genuine issue as to any material fact and that they were entitled to judgment as a matter of law. The trial court found that there were many issues of fact, including what a reasonable speed was considering the road and weather conditions, whether Hurst was operating the tractor trailer reasonably under the circumstances, and the degree to which Hurst contributed to the collision. *Id.* at 45-46.

[13] In June 2016, the trial court held a pretrial conference. Appellants filed their Motion to Bifurcate the trial on the issues of liability and damages and their Motion to Limit Green's Opinion. In July 2016, the trial court issued an order denying both motions. *Id.* at 76.

[14] In July 2016, the five-day jury trial commenced. On the first day of trial, Appellants filed their Motion to Limit Dr. Allen's Testimony. After hearing the parties' arguments, the trial court denied the motion. Tr. Vol. 2 at 109-10.

[15] During trial, Lucas's witnesses included herself, her father, Ward, Dr. Allen, and the video testimony of Dr. Alberto Sanchez, who treated Lucas while she was in the intensive care unit. In addition, Lucas's liability expert, Green, testified that at a speed of fifty miles per hour, the tractor trailer would have had at least three different opportunities to stop if Hurst had applied the brakes. Tr. Vol. 3 at 24-26. He also opined that had Hurst been traveling at thirty-three miles per hour, or one-half the speed limit, she would have had seven

opportunities to avoid the collision because the stopping distance for the tractor trailer would have been shorter. *Id.* at 29-32. Green opined that the speed of the tractor trailer was the cause of the collision. *Id.* at 72.

[16] Hurst testified that before the collision, she was traveling with the flow of traffic, other cars were passing her, and she would have created a hazard if she had been driving too slowly. Tr. Vol. 2 at 135, 205. She testified that Lucas passed her and changed lanes about thirty feet in front of her and started to fishtail. *Id.* at 212. Hurst stated that she did not swerve to the right because she could have lost control of the tractor trailer. *Id.* at 213. Hurst admitted that she would have been able to stop the tractor trailer if she had had begun braking immediately when she saw Lucas's Acura begin to fishtail. *Id.* at 224. She also testified that she would have been able to stop if she had been driving thirty-three miles per hour. *Id.* at 174-75.

[17] In closing argument, Lucas's counsel told the jury that this case is about the "loss of potential," and that every aspect of Lucas's life, "physically, mentally, emotionally," has been affected by the crash. Tr. Vol. 6 at 4. Lucas's counsel told the jury that given the nature and extent of her injuries, $5 million was a reasonable amount of damages. *Id.* at 8. The jury returned a verdict assessing Lucas's damages at $5 million and finding that Lucas and Hurst were each fifty percent at fault. The trial court entered judgment in favor of Lucas and against Appellants for $2.5 million.

In August 2016, Appellants filed their Motion to Correct Error asserting that (1) the trial court erred by denying their Motion to Bifurcate; (2) the trial court erred by denying their Motion to Limit Dr. Allen's Testimony; (3) there was insufficient evidence supporting the jury's allocation of fault; and (4) the verdict was excessive and contrary to the weight of the evidence. Appellants' App. Vol. 3 at 119-56. Following a hearing, in December 2016, the trial court denied Appellants' Motion to Correct Error. Appellants' App. Vol. 2 at 22-25. This appeal ensued. Additional facts will be provided below.

## Discussion and Decision

## Section 1 – Appellants have waived their summary judgment argument.

Appellants first challenge the trial court's denial of their Summary Judgment Motion. We review summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Summary judgment is appropriate only when the pleadings and designated evidence reveal that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 308-09 (Ind. Ct. App. 2014), *trans. denied*. The moving party bears the initial burden of demonstrating the "absence of any genuine issue of fact as to a determinative issue." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to come forward with

contrary evidence showing that a genuine issue does in fact exist. *Cole v. Gohmann*, 727 N.E.2d 1111, 1113 (Ind. Ct. App. 2000).

[20] "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the claim." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016). "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley*, 15 N.E.3d at 1004.

[21] In reviewing summary judgment rulings, we consider only the evidentiary matter that the parties have specifically designated to the trial court. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). In determining whether issues of material fact exist, we do not reweigh the evidence. *Daisy v. Roach*, 811 N.E.2d 862, 864 (Ind. Ct. App. 2004). Rather, "[w]e construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party." *Reed*, 980 N.E.2d at 285.

[22] "Summary judgment must be carefully considered in negligence cases because they are particularly fact sensitive and are governed by the objective reasonable person standard–one best applied by a jury after hearing all of the evidence." *Cox v. Stoughton Trailers, Inc.*, 837 N.E.2d 1075, 1079 (Ind. Ct. App. 2005). To recover on a theory of negligence, a plaintiff must establish three elements: "(1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3)

injury to the plaintiff resulting from the defendant's breach." *Rodriguez v. U.S. Steel Corp.*, 24 N.E.3d 474, 477 (Ind. Ct. App. 2014), *trans. denied* (2015).

[23] Appellants argue that "the record demonstrates that there is no genuine issue of material fact regarding the circumstances giving rise to the occurrence and because [Appellants] were not negligent," and "even assuming [Appellants] were negligent, [Lucas's] superseding negligence bars her recovery." Appellants' Br. at 22. Appellants maintain that Hurst was driving a reasonable rate of speed of forty-five miles per hour when Lucas began fishtailing, and Hurst took the safest action by gradually slowing down rather than braking suddenly and possibly losing control of the tractor trailer. They also contend that Lucas lost control of her vehicle while traveling in snowy conditions and that the accident would not have occurred but for her actions. Appellants' one-page argument consists of bald assertions without any citations to the evidence they designated in support of their summary judgment. Their failure to support their argument with cogent reasoning and citations to the designated evidence results in waiver of their argument. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that contentions in appellant's brief be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal); *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (failure to present cogent argument waives issue for appellate review), *trans. denied*.

[24] Waiver notwithstanding, Appellants' argument is unavailing. Appellants do not dispute that Hurst had a duty to use ordinary care to avoid injuries to other

motorists.  *See Wilkerson v. Harvey*, 814 N.E.2d 686, 693 (Ind. Ct. App. 2004) ("All operators of motor vehicles have a general duty to use ordinary care to avoid injuries to other motorists."), *trans. denied* (2005).  Appellants argue that Hurst was driving a reasonable speed and therefore did not breach her duty of care to Lucas.  Generally, whether a particular act or omission is a breach of duty is a question of fact for the jury.  *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003).  However, "[i]t can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts." *Id.*

[25]  Here, Appellants assert that Hurst was driving forty-five miles per hour in windy, snowy conditions, and there were patches of ice and snow on the road.  Even assuming that these facts were undisputed, we are unpersuaded that they lead to a single inference that forty-five miles per hour was a reasonable speed for a tractor trailer given the specific weather and road conditions.  *See Wilkerson*, 814 N.E.2d at 694 (concluding that genuine issues of material fact existed regarding whether motorist drove at appropriate reduced speed when approaching intersection and when approaching special hazard).  Thus, Appellants did not establish as a matter of law that Hurst did not breach the duty of care to Lucas.  Likewise, the mere fact that Lucas lost control of her car did not establish as a matter of law that any negligence on her part bars her recovery.  Accordingly, we conclude that the trial court did not err by denying Appellants' Summary Judgment Motion.

## Section 2 – The trial court did not abuse its discretion by denying Appellants' Motion to Correct Error as to the issue of bifurcation.

[26] Appellants next challenge the denial of their Motion to Correct Error regarding the trial court's denial of their Motion to Bifurcate. "We review a trial court's denial of a motion to correct error for an abuse of discretion." *Hlinko v. Marlow*, 864 N.E.2d 351, 353 (Ind. Ct. App. 2007), *trans. denied*. "'An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or when the trial court has misinterpreted the law.'" *Id*. (quoting *Pfaffenberger v. Jackson Cty. Reg'l Sewer Dist.*, 785 N.E.2d 1180, 1183 (Ind. Ct. App. 2003)).

[27] Appellants' Motion to Bifurcate is governed by Indiana Trial Rule 42(B), which provides in relevant part, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim." In ruling on a motion for bifurcation, "'[t]he trial court is granted a wide degree of latitude in exercising its proper discretion …, and we will reverse the denial only for an abuse of that discretion.'" *Dan Cristiani Excavating Co. v. Money*, 941 N.E.2d 1072, 1075 (Ind. Ct. App. 2011) (quoting *Elkhart Cmty. Schs. v. Yoder*, 696 N.E.2d 409, 414 (Ind. Ct. App. 1998)), *trans. dismissed*.

[28] In deciding whether to bifurcate a trial and separately try the issues of liability and damages, the trial court should consider the following:

The avoidance of prejudice is more than sufficient reason for a separate trial. However, a separate trial should not be granted solely upon the movant's speculation that it might be prejudiced by certain testimony. If an issue can be conveniently and expeditiously resolved, a separate trial may be ordered in the interest of judicial economy. If the proof of damages will be complicated and costly the issue of liability could first be separately tried. This was the specific purpose in adding subdivision (C) to T.R. 42 [(regarding submission of claims or issues to juries in stages)]. However, ... while the separation of trials can result in judicial economy when the defendant prevails on the issue of liability (by obviating the need for a trial on damages), *the defendant must first convince the court that it has a persuasive argument on the question of liability* in order to justify the potential risk and expense of two trials.

*Id*. at 1075-76 (quoting *Frito-Lay, Inc. v. Cloud*, 569 N.E.2d 983, 990 (Ind. Ct. App. 1991)) (emphasis added).

[29] As to whether Appellants presented the trial court with a persuasive argument on the question of liability, they bluntly assert that they presented "a strong liability defense," without further explication. Appellants' Br. at 24. Because they have failed to provide cogent argument on the threshold issue, they have waived their argument. *See Loomis*, 764 N.E.2d at 668.

[30] As for prejudice, they argue that Lucas's injuries were so severe and she was such a sympathetic witness that the "evidence of her injuries caused the jury to overlook the law on the issue of liability in order to compensate her." *Id*. at 25. Contrary to Appellants' assertion, the fact that the jury found that Lucas was fifty percent at fault shows that it did not overlook the law on liability. The

jury's assessment of fifty percent fault to Lucas "is a strong indicator that jurors were not unduly affected by the evidence of [her] damages." *Shafer & Freeman Lakes Envtl. Conservation Corp. v. Stichnoth*, 877 N.E.2d 475, 483 (Ind. Ct. App. 2007), *trans. denied* (2008).

[31] Furthermore, we are unpersuaded by Appellants' claim that this case is comparable to *Frito-Lay*, 569 N.E.2d 983. In that case, another panel of this Court determined that bifurcation on the issues of liability and damages was necessary on retrial. *Id*. at 991. The *Frito-Lay* court explained that the potential for prejudice resulting from the plaintiff's injuries amounted to much more than mere speculation because her injuries were so terrible: she was comatose for many months; sustained a number of broken bones in her pelvis and left leg, which left her with a shorter left leg and marked limp; suffered from paralysis on the left side of her body, which distorted her facial muscles; had undergone two brain surgeries, which removed significant portions of her brain; suffered severe learning and memory disabilities; could never be employed; and required twenty-four hour supervision and residential care for the rest of her life. *Id*. at 985, 991. Even in light of such grave injuries, the *Frito-Lay* court observed that it would have been extremely reluctant to invade the province of the trial court's discretion on the issue of bifurcation, if it had not already determined that reversal was warranted based on unrelated errors as to both liability and damages. *Id*. at 991. The court concluded that "the denial of a motion for the bifurcation on the issues of liability and damages in the retrial of this case would constitute an abuse of discretion." *Id*.

[32] We observe that the *Frito-Lay* court expressed its extreme reluctance to encroach on the trial court's discretion on the issue of bifurcation and was willing to do so only because there were other reversible errors and a retrial was going to be held in any event. In this case, the circumstances that would warrant reversal of the trial court's decision regarding bifurcation are not present. Therefore, we conclude that the trial court did not abuse its discretion by denying Appellants' Motion to Correct Error on the issue of bifurcation.

## Section 3 –Appellants have waived any claim of error regarding their Motion to Limit Green's Opinion.

[33] Appellants claim that the trial court abused its discretion by denying their Motion to Limit Green's Opinion. Green's written report contained the following opinions to which Appellants objected: (1) Hurst testified at her deposition that she had been applying her brakes and slowing down for at least thirty seconds prior to the collision, but the ECM data from the tractor trailer showed that Hurst was not braking or slowing down for nearly that long; (2) had Hurst reduced her speed by one-half, she would have been able to stop prior to crashing into the Acura; and (3) had Hurst reduced her speed, she should have been able to avoid the crash altogether or, at the very least, she would have reduced the severity of the collision. Appellants' App. at Vol. 2 at 56.

[34] On appeal, Appellants argue that Green's opinions violate Indiana Rule of Evidence 704(b), which provides that witnesses may not testify to opinions concerning whether a witness has testified truthfully. The parties' briefs on this

issue take some interesting twists and turns. In their original brief, Appellants fail to cite to the portion of the transcript that contains Green's allegedly inadmissible testimony. In her appellee's brief, Lucas asserts that Appellants failed to object to the evidence at trial, and therefore waived any claim of error. It is well settled that "[o]nly trial objections, not motions in limine, are effective to preserve claims of error for appellate review." *Raess v. Doescher*, 883 N.E.2d 790, 796-97 (Ind. 2008). "A trial court's ruling on a motion in limine does not determine the ultimate admissibility of the evidence; that determination is made by the trial court in the context of the trial itself." *Walnut Creek Nursery, Inc. v. Banske*, 26 N.E.3d 648, 653 (Ind. Ct. App. 2015). "'Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error.'" *Id.* (quoting *Hollowell v. State*, 753 N.E.2d 612, 615-16 (Ind. 2001)). "The failure to make a contemporaneous objection to the admission of evidence at trial, so as to provide the trial court an opportunity to make a final ruling on the matter in the context in which the evidence is introduced, results in waiver of the error on appeal." *In re Guardianship of Hickman*, 805 N.E.2d 808, 822 (Ind. Ct. App. 2004), *trans. denied*.

[35] In their reply brief, Appellants attempt to avoid waiver and direct us to a portion of Green's trial testimony to which they objected. Appellants' Reply Br. at 7-8 (citing Tr. Vol. 3 at 78-79). The record shows that Lucas's counsel was questioning Green regarding Hurst's deposition testimony that she had been applying her brakes and slowing down for thirty seconds prior to the

collision.  Lucas's counsel asked Green, "We know that's just a lie: isn't it?"
Tr. Vol. 3 at 79.  Appellants objected, and the trial court sustained their
objection.  Lucas's counsel then asked Green, "We know that's false, correct?"
*Id*.  Appellants objected again, and the trial court sustained their objection.
Lucas's counsel withdrew the questions.  Lucas's counsel then asked Green if
Hurst's testimony was inconsistent with the ECM data, and Green answered
that it was.  Appellants did not object.

[36]     To the extent that Appellants failed to object to testimony that was similar in
substance to the opinions to which they objected to in their Motion to Limit
Green's Opinion, they have waived any claim of error.  *See Banske*, 26 N.E.3d at
654 (concluding that defendant's motion in limine to exclude naprapath's
testimony regarding her treatment of plaintiff did not preserve claim of error
and defendant waived all issues as to the admissibility of naprapath's testimony
because defendant did not object at trial when naprapath's deposition was read
into evidence or when naprapath's medical records were admitted).  To the
extent that Appellants objected, their objections were sustained, Lucas's counsel
withdrew the questions, and Green did not answer.  No evidence was admitted.
Therefore, there is no basis for a claim of error.

## Section 4 –Appellants have waived any claim of error regarding their Motion to Limit Dr. Allen's Testimony.

[37]     In their Motion to Limit Dr. Allen's Testimony, Appellants argued that Lucas
failed to comply with Indiana Trial Rule 26(E)(2)(b) by failing to supplement
her response to requests for production of documents, specifically medical

records from her treatment with Dr. Allen after March 2013. Appellants' App. Vol. 3 at 74-76. In support, they asserted that on November 19, 2013, Lucas provided her initial response to their request for production of documents. Her response included medical records from her treatment with Dr. Allen, which showed that he had last treated Lucas on March 5, 2013. *Id*. at 75. Although Lucas had continued treatment with Dr. Allen after March 5, 2013, she had not supplemented her medical records. Appellants requested that any exhibits or testimony from Dr. Allen regarding Lucas's medical condition after March 5, 2013, be excluded. *Id*. at 76. After hearing the parties' arguments, the trial court denied the motion. Tr. Vol. 2 at 109-110. After trial, Appellants filed a Motion to Correct Error, which included a claim that the trial court erred by denying their Motion to Limit Dr. Allen's Testimony. In addition to their argument that Lucas failed to supplement her response to requests for production of documents, they argued that Lucas failed to amend her answers to interrogatories. The trial court denied their Motion to Correct Error. On appeal, Appellants aver that the trial court abused its discretion by denying their Motion to Correct Error on this issue.

[38]  Lucas posits that Appellants waived their claim regarding Dr. Allen's testimony on several grounds, the first being that Appellants failed to object to the evidence during the trial. The record shows that on direct examination, Dr. Allen testified that he had his initial visit with Lucas in 2012, that he had continued to treat her every six months, and that her last visit was about a week

or two before trial. Tr. Vol. 3 at 159, 190. Appellants did not object, and therefore they have preserved no claim of error. *See Banske*, 26 N.E.3d at 654.

[39] Lucas also contends that Appellants invited any error by introducing specific evidence regarding Dr. Allen's medical treatment at trial. Under the doctrine of invited error, "'a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct.'" *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 133 (Ind. 2005) (quoting *Evans v. Evans*, 766 N.E.2d 1240, 1245 (Ind. Ct. App. 2002)). "Invited error is not subject to review by this court." *Berman v. Cannon*, 878 N.E.2d 836, 839 (Ind. Ct. App. 2007), *trans. denied* (2008).

[40] The record shows that during their cross-examination of Dr. Allen, Appellants submitted all of Dr. Allen's handwritten notes of his treatment of Lucas, including treatment after March 5, 2013. Tr. Vol. 3 at 206; Defendants' Ex. 15. The record also shows that Appellants questioned Dr. Allen about the six times he treated Lucas after March 5, 2013. Tr. Vol. 3 at 245-Vol. 4 at 14. Appellants asked him expressly about each of the treatments, which occurred in July 2013, February 2014, September 2014, May 2015, November 2015, and July 2016. Tr. Vol. 3 at 245, 246, 249; Tr. Vol. 4 at 6, 8, 9. "'It is well settled that error in admitting evidence at the trial is not available on appeal where the complaining party submits evidence to substantially the same effect.'" *Blocher v. DeBartolo Props. Mgmt., Inc.*, 760 N.E.2d 229, 235 (Ind. Ct. App. 2001) (quoting *Hagerman Constr., Inc. v. Copeland*, 697 N.E.2d 948, 954 (Ind. Ct. App. 1998), *opinion on reh'g, trans. denied*), *trans. denied* (2002). Accordingly, any error in the admission

of Dr. Allen's medical treatment of Lucas after March 2013 was invited and is not subject to appellate review.

[41] Further, Lucas claims that Appellants' argument that she failed to amend her answers to interrogatories was improperly raised for the first time in their Motion to Correct Error. "A party may not raise an issue for the first time in a motion to correct error or on appeal." *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000). The record shows that Appellants did not raise this argument to the trial court at the hearing on their Motion to Limit Dr. Allen's Testimony; in fact, Appellants' counsel told the trial court, "I'm not complaining that they didn't change their interrogatory answer." Tr. Vol. 2 at 105. Therefore, this argument is waived.

[42] In sum, the Appellants have failed to present any reviewable issue regarding the trial court's denial of their Motion to Limit Dr. Allen's Testimony.

## Section 5 – The trial court did not abuse its discretion by refusing Appellants' tendered jury instructions.

[43] Appellants argue that the trial court erred by refusing two of their tendered jury instructions. "The purpose of an instruction 'is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" *Wilkerson v. Carr*, 65 N.E.3d 596, 601 (Ind. Ct. App. 2015) (quoting *Joyner-Wentland v. Waggoner*, 890 N.E.2d 730, 733 (Ind. Ct. App. 2008)). We review a claim of error based on the giving of an instruction for an abuse of discretion.

*Collins v. Rambo*, 831 N.E.2d 241, 245 (Ind. Ct. App. 2005). "In reviewing a trial court's decision to give or refuse a tendered instruction, this Court considers whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions." *Willis v. Westerfield*, 839 N.E.2d 1179, 1189 (Ind. 2006). Further, "'[e]ven if the instruction is a correct statement of the law, is supported by the evidence, and is not covered by the other instructions, we will not reverse unless the failure to give the instruction substantially and adversely affects the rights of the complaining party so as to quite likely have affected the result.'" *Wallace v. Rosen*, 765 N.E.2d 192, 196 (Ind. Ct. App. 2002) (quoting *Barnard v. Himes*, 719 N.E.2d 862, 868 (Ind. Ct. App. 1999), *trans. denied*).

[44] The first instruction tendered by Appellants, number 6(A), reads, "You are instructed that the duty imposed upon Defendants does not require them to use every possible precaution to avoid Plaintiff's injury." Appellants' Br. at 37; Appellee's Br. at 31.[3] Appellants maintain that instruction 6(A) correctly states the law. In support, they cite *Kostidis v. General Cinema Corp. of Indiana*, 754 N.E.2d 563 (Ind. Ct. App. 2001), *trans. denied*. In that case, the court concluded that the trial court did not abuse its discretion in giving the following instruction:

---

[3] Both parties cite solely to the transcript volume 5 at 219 but that page does not reflect the parties version. However, because they are in agreement as to instruction 6(A), we have used their version.

> I instruct you that the duty imposed upon the Defendants did not require them to use every possible precaution to avoid the Plaintiff's injury; nor that the Defendants should have employed any particular means, which may appear after the accident, would have avoided it; nor were the Defendants required to make accidents impossible. The Defendants were only required to use such reasonable precaution to prevent the accident as would have been adopted by ordinarily prudent persons under the circumstances as they appeared prior to the accident.

*Id.* at 571-72. Appellants also cite *Gamble v. Lewis*, 227 Ind. 455, 465, 85 N.E.2d 629, 634 (1949), in which the court concluded that an instruction similar to the one in *Kostidis* was improperly refused by the trial court.

[45] Instruction 6(A) consists of a single sentence that is virtually the same as the first sentence in the *Kotisdis* and *Gamble* instructions. However, that single sentence standing alone, as it does in Appellants' tendered instruction, is incomplete and misleading. It could be read to mean that if there is a possible precaution that the defendant did not take, then the defendant is not liable. Accordingly, we conclude that the trial court did not abuse its discretion in refusing Appellants' tendered instruction 6(A).

[46] Appellants also challenge the trial court's refusal of their tendered instruction 7, which reads,

> If you should find by the preponderance of the evidence, that the sole, proximate cause of the accident and the Plaintiff's injuries was the actions of the Plaintiff, Kathleen Lucas, that caused her to lose control of her vehicle, and you further find that the

Defendant, Caroline Hurst, was not negligent, then your verdict should be for the Defendants and against Plaintiff.

Appellants' Vol. 3 at 87.

[47] Appellants contend that tendered instruction 7 is a correct statement of the law, citing *Gates v. Rosenogle*, 452 N.E.2d 467 (Ind. Ct. App. 1983). Although the *Gates* court found that a nearly identical instruction was a correct statement of the law, it went on to explain,

> We disagree with [defendant's] assertion that it, in effect, represents a separate or special defense which requires the giving of an instruction. It is not and does not. *It is merely an implication of the requirement that in order to recover from the defendant, the plaintiff must prove by a preponderance of the evidence that the defendant in question was guilty of a breach of duty (negligence) which proximately caused plaintiff's injuries.* If the defendant was not guilty of such an act of negligence, then the plaintiff was not entitled to recover from him regardless of whether anyone else was negligent. The court so instructed the jury through defendant's tendered instruction No. 1 and the court's other instructions concerning plaintiff's burden of proof. Accordingly, there was no error in refusing defendant's tendered instruction No. 3.

*Id*. at 475 (emphasis added). As in *Gates*, other instructions in this case informed the jury regarding breach of duty (final instruction 15) and Lucas's burden of proof (final instructions 5-6), comparative fault (final instructions 13-14), and proximate cause (final instruction 18). Appellants' App. Vol. 3 at 92-93, 100-102, 105. As such, we find no abuse of discretion in the trial court's refusal of instruction 7.

## Section 6 – The trial court did not abuse its discretion by denying Appellants' Motion to Correct Error regarding the jury's allocation of fault.

[48] Appellants argue that the trial court abused its discretion by denying their Motion to Correct Error regarding the jury's allocation of fault. Specifically, they insist that the evidence does not support the jury's determination that Lucas and Hurst are each fifty percent at fault and that no reasonable jury could have found that Lucas was less than fifty-one percent at fault.

[49] In reviewing the jury's allocation of fault, we observe,

> The apportionment of fault is uniquely a question of fact to be decided by the factfinder. At some point the apportionment of fault may become a question of law for the court. But that point is reached only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion. In evaluating a jury's allocation of fault, we may not reweigh the evidence, for such is not the function of a court of review.

*Burton v. Bridwell*, 938 N.E.2d 1, 6 (Ind. Ct. App. 2010) (quoting *Dennerline v. Atterholt*, 886 N.E.2d 582, 598 (Ind. Ct. App. 2008), *trans. dismissed*) (citations, brackets, and quotation marks omitted), *trans. denied* (2011).

[50] Appellants declare that (1) the undisputed evidence shows that Lucas's decision to change lanes caused the accident; (2) she presented no evidence to dispute that she failed to exercise reasonable care, was traveling too fast, and lost control of her vehicle as a result of the lane change; (3) her liability expert, Green, testified that the accident would not have occurred had she not lost

control of her vehicle; (4) Hurst never lost control of the tractor trailer and reduced speed to avoid the collision; and (5) Officer Dale Morgan, the police officer who responded to the scene, testified that Hurst's conduct was not a contributing circumstance to the accident. Lucas counters that there was evidence that Hurst was driving the tractor trailer faster than reasonable under the winter road conditions and that Hurst did not exercise reasonable care because she did not slow down or brake immediately upon seeing Lucas lose control of her vehicle and did not attempt to avoid the accident by steering toward the shoulder. We agree with Lucas.

[51] The evidence shows that the road conditions were snowy and icy. Hurst testified that she was driving forty-five to fifty miles per hour. She admitted that if she had begun braking when she saw Lucas's Acura begin fishtailing she could have stopped. Green opined that at a speed of fifty miles per hour, the tractor trailer would have had at least three different opportunities to stop if Hurst had applied the brakes sooner. The ECM data showed that Hurst did not take her foot off the gas pedal until ten seconds before the collision and that she did not apply the brakes until a second or two before impact.

[52] Hurst also testified that she was taught to reduce her speed by one half the speed limit in snowy conditions. The speed limit was sixty-five miles per hour, half of which is thirty-three miles per hour. The ECM data showed that Hurst had not reduced her speed by half within the minute prior to the collision other than at the point of impact. Tr. Vol. 2 at 26. Green opined that had Hurst been traveling at thirty-three miles per hour, she would have decreased the distance

she needed to stop and would have had seven opportunities to avoid the collision. Tr. Vol. 3 at 29-32. Officer Morgan testified that he did not know how fast Lucas was driving and that she could have lost control of her vehicle if she had been driving five miles per hour. Tr. Vol. 5 at 22. We cannot say that the evidence is undisputed and leads to only one logical conclusion. The Appellants argument is merely a request to reweigh the evidence, which we must decline. *See Burton*, 938 N.E.2d at 6. Accordingly, we find no abuse of discretion in the trial court's denial of Appellants' Motion to Correct Error on this issue.[4]

## Section 7 – The trial court did not abuse its discretion by denying Appellants' Motion to Correct Error regarding the jury's determination of Lucas's damage award.

[53] Last, Appellants assert that the damage award of $5 million, of which Lucas received $2.5 million, is shockingly excessive and against the weight of the evidence. In general, a person injured by another's negligence is entitled to reasonable compensation. *Berman*, 878 N.E.2d at 840. Reasonable compensation means "an amount that would reasonably compensate the plaintiff for bodily injury and for pain and suffering." *Id*. at 841. Reasonable

---

[4] Appellants compare this case to *Warrick v. Stewart*, 29 N.E.3d 1284 (Ind. Ct. App. 2015), but that case is substantially different from this one. There, defendant's dog darted out into the street and collided with plaintiff-motorcyclist who was traveling below the speed limit. The jury found that plaintiff was seventy percent at fault, and plaintiff filed a motion to correct error. The trial court found that all the evidence indicated that plaintiff was traveling under the speed limit and the jury's assignment of seventy percent fault to him was against the weight of the evidence and granted his motion to correct error. Defendant appealed, but we concluded that the evidence supported the trial court's determination that plaintiff was not speeding and affirmed the decision of the trial court. *Id*. at 1289, 1292.

compensation also includes "past, present, and future expenses reasonably necessary or incidental to the plaintiff's effort to alleviate [her] injuries and all pecuniary losses suffered, or to be suffered, as a result of inability to engage in [her] usual occupation." *Kavanagh v. Butorac*, 140 Ind. App. 139, 145, 221 N.E.2d 824, 828 (1966).

[54] "A jury determination of damages is entitled to great deference when challenged on appeal." *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind. 2001). "We will not substitute our idea of a proper damage award for that of the jury." *Berman*, 878 N.E.2d at 841. "[W]hen the evidence is conflicting, the jury is in the best position to assess the damages." *Cox v. Matthews*, 901 N.E.2d 14, 23 (Ind. Ct. App. 2009), *trans. dismissed*. Thus, when reviewing a damage award, we will not reweigh the evidence and will consider only the evidence and the reasonable inferences arising therefrom that support the jury's award. *Reed v. Bethel*, 2 N.E.3d 98, 113 (Ind. Ct. App. 2014). Our supreme court has explained that a damage award is *not* excessive "where (1) the award was not based upon jury prejudice, partiality, or corruption, (2) the jury has not misunderstood or misapplied the evidence, (3) the award was not based upon consideration of an improper element such as liability insurance, and (4) the award was within the parameters of the evidence." *Kimberlin v. DeLong*, 637 N.E.2d 121, 130 (Ind. 1994), *cert. denied* (1995). We will uphold the damage award if it "can be explained on any reasonable ground." *Berman*, 878 N.E.2d at 840. "'Our inability to actually look into the minds of the jurors is, to a large extent, the reason behind the rule that we will not reverse if the award falls

within the bounds of the evidence.'" *Sears*, 742 N.E.2d at 462 (quoting *Annee v. State*, 256 Ind. 686, 690, 271 N.E.2d 711, 713 (1971)).

[55] Appellants liken this case to *Lucero v. Lutheran University Ass'n,* 621 N.E.2d 660 (Ind. Ct. App. 1993), but that case is distinguishable. There, Lucero slipped and fell on icy stairs at a university campus. Lucero's physical injuries were minor and his medical bills totaled $1200 to $1300. His major claim for damages stemmed from his allegation that he was unable to participate in military combat activities because he was not medically qualified. The jury awarded Lucero $240,000. The university filed a motion to correct error, contending that the damage award was excessive and unsupported by the evidence. The trial court agreed. It found that Lucero's actual medical expenses were only $1300; and although the evidence indicated that Lucero had physical conditions that rendered him unable to engage in military activities, the evidence was undisputed that these were preexisting conditions and not a result of the accident. *Id*. at 663. The evidence was undisputed because Lucero presented no evidence to support any causal link between the accident and his inability to participate in the military, and in fact his own medical expert testified that there was no causal link between the accident and his inability to participate in the military. *Id*. at 663-64. Accordingly, the trial court found that the award of $240,000 was shockingly and outrageously excessive, granted the university's motion to correct error, and ordered a new trial. *Id*. at 664.

[56] Lucero appealed, arguing in relevant part that the trial court erred when it determined that the verdict was against the weight of the evidence. This court

rejected his argument. *Id*. The *Lucero* court explained that Lucero's inability to qualify to serve in the army was due to his preexisting medical conditions, and therefore he failed to prove that his fall was the proximate cause for damages related to his military career. *Id*. Thus, the *Lucero* court concluded that "the trial court did not abuse its discretion in determining the verdict was against the weight of the evidence and granting a new trial." *Id*.

[57] Here, there is ample evidence to support the damage award. As a result of the accident, Lucas was in a coma in the intensive care unit and not expected to live. She received multiple permanent injuries and will experience chronic, lifelong physical pain. Due to her injuries, she was in wheel chair and required rehabilitation followed by physical therapy to learn how to walk again. Lucas had to give up running and playing the piano and the violin. She will also suffer headaches and migraines, for which she will require medication. The cognitive impairment she experiences because of the accident has made it difficult or impossible for her to pursue her dream of becoming an attorney.

[58] This case is similar to *Reed*, 2 N.E.3d 98. There, another panel of this Court upheld the jury's damage award of $3.9 million where a student was struck by a bus. *Id*. at 115. He suffered severe injuries that required a sixteen-day hospital stay and multiple surgeries and skin grafts. The jury found that the student's total damages were $5 million, but that he was twenty-five percent at fault, resulting in a damage award of $3.9 million. The bus driver and her employer appealed arguing in relevant part that the verdict was excessive because the student failed to introduce evidence of permanent impairment or any need for

further medical treatment, and that his evidence of permanent scarring and pain was not compelling. The *Reed* court observed that the student presented evidence that he suffered fractures to his spine and right ankle, a spleen laceration, and a degloving injury to his left foot, required a sixteen-day hospital stay, and underwent multiple surgeries and skin grafts. *Id.* It further noted that he presented evidence that he was in good physical condition before the accident and was limited in his ability to participate in the same activities after the accident. Thus, the *Reed* court concluded that the defendants' argument was merely a request to reweigh the evidence, and affirmed the jury's award. *Id.*

[59] Here Appellants seem to be arguing that the jury placed an unreasonably high value on what it would take to compensate Lucas for her inability to engage in all the activities she had before the accident and to pursue the career she had set her sights on. They also argue that they disputed the extent and permanency of her injuries and that there is insufficient evidence that the accident was the proximate cause of her inability to pursue her desired profession. These arguments amount to nothing more than invitations to reweigh the evidence, which we must decline. *See id.* at 113. We conclude that the jury's damage award falls within the bounds of the evidence, and therefore affirm it.

[60] Affirmed.

Baker, J., and Barnes, J., concur.