

**FILED**

Feb 19 2015, 10:06 am

*Kevin S. Smith*

**CLERK**

of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

William H. Kelley
Thaddeus Craig Kelley
Kelley & Belcher
Bloomington, Indiana

ATTORNEYS FOR *AMICUS CURIAE*
Defense Trial Counsel of Indiana

Donald B. Kite, Sr.
Wuertz Law Office, LLC
Indianapolis, Indiana

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEY FOR APPELLEE

Michael E. Polen, Jr.
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

ATTORNEY FOR *AMICUS CURIAE*
Indiana Trial Lawyers Association

Lance R. Ladendorf
Ladendorf Law
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

Walnut Creek Nursery, Inc.,
d/b/a Alsip Home & Nursery,

*Appellant-Defendant,*

v.

Barbara Banske,

*Appellee-Plaintiff.*

February 19, 2015

Court of Appeals Cause No.
45A05-1406-CT-256

Appeal from the Lake Superior
Court.
The Honorable John R. Pera, Judge.
Cause No. 45D10-1401-CT-2

**Sharpnack, Senior Judge**

# Statement of the Case

Walnut Creek Nursery, Inc., d/b/a Alsip Home & Nursery ("Alsip"), appeals from a jury's verdict in favor of Barbara Banske, in a negligence action brought by Banske. Alsip contends that the trial court committed reversible error by allowing a naprapath, who was licensed as such in Illinois, to testify about her treatment of Banske in Illinois. Alsip claims that the testimony should have been excluded and that a new trial should be held during which that testimony is not admitted. Concluding that no error is preserved for our review, we affirm.

# Issue

Alsip presents the following issue for our review: Whether the trial court committed reversible error by allowing the naprapath's testimony at trial.

# Facts and Procedural History

On February 28, 2011, Banske, who lives in Lansing, Illinois, slipped on a floor mat and fell on her side while on Alsip's premises located in St. John, Indiana. Banske sought treatment for her injuries. Banske had previously sought treatment from Laura Grice, a naprapath licensed in Illinois, and sought treatment from Grice in Illinois after her slip and fall. Additional information about naprapathy and the treatment Banske received will be provided later in this opinion.

Banske filed a complaint against Alsip seeking to recover damages for the injuries she alleged she sustained from her fall. On July 17, 2013, Alsip took a discovery deposition of Grice in Illinois, and both counsel for Alsip and Banske questioned her. On November 7, 2013, Alsip filed a motion in limine requesting the exclusion of Grice's testimony, alleging that Grice was not qualified to testify about 1) Banske's medical condition, 2) the proximate cause of Banske's stated physical or emotional condition, 3) Banske's truthfulness or honesty, or 4) the amounts that Grice charged for her services.

On December 5, 2013, a final pre-trial conference was held before Lake Superior Court Judge John M. Sedia, who considered Alsip's motion in limine. Judge Sedia denied the motion in limine, concluding that Grice could testify as a naprapath, but that her testimony would be limited as follows:

> This is a little different. This deals with treatment of injuries. I guess what I would rule is that I think she can testify, but she has to testify only within the confines of her skill. In other words, she can't say well, you know, I did soft manipulation on her, but then I looked at the X-ray, and the X-ray showed this. So I think, you know, this is what caused it. Or, I talked to a chiropractor, we conferred, and we agreed that—you know, she can't do any of that.
>
> She can just—you know, whatever the limits of her ability—of her qualification and licensure, she can testi—I think she can testify to because she's licensed, albeit not in Indiana, and she did the treatment in Illinois, and she's familiar with the patient, but I—you know, I –but her testimony has to be very limited, and so that's what I'll rule.
>
> And I guess in the context of a motion *in limine*, you know, and I want those words that she's limited to testifying as to the qualifications of her particular discipline. You know, it's going to come up anyway

possibly where, you know, there will be an objection anyway, you know, of how –of whether or not she's, you know, running afield of that.

So I guess I want to be prepared to deal with that as well, because I'm not sure, you know—I have a general idea what naprapaths do, but certainly, you know, I've never been treated by one, and I don't know, and I'm sure [defense counsel] will be very attuned to whether or not he thinks that she's exceeding the limits of her qualifications, and, you know, just looking at his motion, you know, and he's right. You know, we don't have any case law that says yes or no, so maybe this will be ripe for appeal, another chance for me to get reversed maybe, I don't know, but that's—I think she can testify, but I think she has to stay within the confines of her particular discipline.

Appellant's App. pp. 58-59.

[6] Judge Sedia later recused from the case and the matter was transferred to Lake Superior Court Judge John R. Pera. At the jury trial, Banske introduced Grice's testimony by reading excerpts of her deposition. Before the deposition was read, Alsip objected on the grounds raised in the motion in limine. The following arguments were made regarding the deposition testimony:

[DEFENSE]: This witness's testimony is the subject of our motion in limine. We want to renew our objection to her qualifications to give testimony in this case. She's not a medical doctor or chiropractor licensed to do anything in the State of Indiana. She's admitted she can't give testimony as to causation of injuries. We don't think she's qualified as an expert in this case.
THE COURT: What do you—
[PLAINTIFF]: Doctor—she's a doctor of naprapathy. She's licensed through the State of Illinois. All the treatment happened in Illinois.
THE COURT: She's licensed there?
[PLAINTIFF]: And she's licensed in the State of Illinois. None of the treatment took place in Indiana.

THE COURT: And what was the ruling on the motion in limine?
[DEFENSE]: It was denied. Judge Sedia said she could testify within her qualifications.
THE COURT: All right. That's my ruling as well.
[DEFENSE]: All right. Thank you.

Tr. pp. 235-36.

[7] Excerpts of the direct examination and cross-examination of Grice's deposition were read into evidence by both parties without objections during the testimony. Grice testified that she received her degree from the Chicago National College of Naprapathy. She had not received a bachelor's degree, and other than her naprapathy degree had no medical, chiropractic, or osteopathic training. Grice neither practiced nor was licensed to practice naprapathy in Indiana.

[8] Grice testified that naprapathy is "soft tissue manipulation, connective tissue manipulation" with the goal of "assist[ing] the body in healing itself." Tr. pp. 251-52. Naprapathy involves application of pressure to points on a person's body that "releases the contracture or tightness of the soft tissue to facilitate opening up the circulation." *Id*. at 252-53.

[9] Grice testified that as a naprapath she cannot prescribe medications, take x-rays, or perform invasive surgery or diagnostic testing. She does regularly review physicians' reports and takes down a patient's medical history. Grice could not recall if medical doctors had ever referred patients to her for

treatment, but that those referrals are "not the normal situation" in her practice. *Id.* at 255-56.

[10] Grice had treated Banske since 2007, and before 2011 had treated Banske only for pain in the right knee. In May 2008, during Banske's last visit for treatment with Grice prior to Banske's fall, Banske did not complain about any problems in her lower back, left side, left hip, left shoulder, or left leg.

[11] March 8, 2011 was Banske's first visit for treatment with Grice after her fall. She told Grice about the fall and related that she was experiencing pain on the left side of her body. Grice conducted objective tests on Banske and found muscle spasms in the trapezius, the left gluteus, the piriformis, and the hamstrings, and found trigger points. Grice also performed a straight leg raising test and found radiating pain in Banske's legs. Grice also found that Banske's pelvis was in an abnormal position.

[12] Grice continued treating Banske for more than a year, and testified that Banske followed her recommendations. Grice's usual treatment involves using her hands, palpating for contractures, and manipulating the connective tissue to release the contracture. Grice also applied cryotherapy, which involves the application of an analgesic called Sombra to the inflamed areas of Bankse's body. Sombra is only obtainable by medical doctors, chiropractors, or naprapaths. Grice further testified that Banske, who had always been cheerful and upbeat, was sad after the fall because she could not perform some of the activities she could do in the past.

[13] After the deposition was read, Banske introduced the videotaped deposition of Ram Aribindi, M.D., an orthopedic surgeon practicing in Olympia Fields, Illinois, who treated Banske. Dr. Aribindi testified that Banske first visited him on March 9, 2011. During that visit, Banske told Dr. Aribindi about her fall and complained of pain in her left wrist, bruising on the left buttock region, pain in the knee, and pain and swelling in her left ankle. Dr. Aribindi examined her and diagnosed her with a left ankle sprain, left knee pain, and left wrist pain, all caused or aggravated by the fall. He further testified that because Banske was sixty-six years old at the time of her fall, the fall may have aggravated arthritic changes in Banske's left side and left knee.

[14] Dr. Aribindi gave Banske a steroid injection in her left knee, fitted a brace over her left wrist, gave her a lace up brace over her left ankle, ordered her to refrain from lifting or carrying weights with her left arm, and prescribed Naproxen. Banske saw Dr. Aribindi three weeks later. At that appointment Dr. Aribindi determined that Banske suffered from plantar fasciitis, aggravation of underlying arthritis in her left knee, and arthritic changes in her thumb, wrist, and hand. Banske was fitted with a nighttime splint for the fasciitis, and Dr. Aribindi referred her to a physical therapist. On Banske's next appointment with Dr. Aribindi, he noted that she continued to suffer her previous pain, in addition to pain in her left shoulder girdle. Dr. Aribindi ordered an MRI of Banske's shoulder and ordered a left CAM walker boot to immobilize Banske's foot.

[15] Banske's MRI revealed that she had suffered a rotator cuff tear. Banske elected to have a left shoulder arthroscopy, and Dr. Aribindi gave her a steroid injection in the left wrist. At Banske's next appointment on June 6, 2011, Dr. Aribindi noted that her symptoms had improved. Dr. Aribindi noted on November 6, 2011, that although Banske complained of lower back pain, he declined to attribute that pain to the fall.

[16] Dr. Aribindi testified that all of the treatment he provided to Banske was reasonable and necessary, and that the opinions he expressed in his testimony were to a reasonable degree of medical certainty. He concluded that Banske's fall caused her left shoulder pain, aggravation of underlying left knee osteoarthritis, left wrist pain, a left ankle sprain, and left foot pain. In his opinion, her fall also caused or aggravated a rotator cuff tear in Banske's left shoulder.

[17] Banske testified that in addition to Grice and Dr. Aribindi, she received treatment after the fall in the emergency room of St. Anthony Medical Center in Crown Point, Indiana.

[18] Pursuant to the parties' stipulation, the trial court admitted the following medical records related to Banske's treatment: 1) Dr. Aribindi's records; 2) emergency room records from St. Anthony Medical Center; and 3) physical therapy records from Ingalls Center for Outpatient Rehab. Later, Banske offered Grice's medical records into evidence. Counsel for Alsip specifically stated that there was no objection to the admission of that evidence. Banske's

medical bills and her medical specials summary, which reflected $14,441.04 in claimed medical expenses were also admitted.

[19]  In addition to the medical testimony, Banske called lay witnesses, including her husband, her son, and her best friend, to testify about their observations of the differences in Banske's physical condition and behavior before and after she slipped and fell. Banske, a gym teacher at St. Agnes School in Chicago Heights, Illinois, found her work more difficult after her fall and her physical limitations prevented her from engaging in many of the physical activities she had previously enjoyed.

[20]  At the conclusion of the jury trial, the jury returned a verdict in favor of Banske, finding her to be ten percent at fault and Alsip to be ninety percent at fault. The jury awarded Banske $243,000 in damages, and the trial court entered judgment on the jury's verdict. Alsip now appeals the judgment.

## Discussion and Decision

[21]  Alsip presents several issues for our review, but the dispositive issue involves the admissibility of Grice's testimony. "Only trial objections, not motions in limine, are effective to preserve claims of error for appellate review." *Raess v. Doescher*, 883 N.E.2d 790, 796-97 (Ind. 2008). A trial court's ruling on a motion in limine does not determine the ultimate admissibility of the evidence; that determination is made by the trial court in the context of the trial itself. *Clausen v. State*, 622 N.E.2d 925, 927 (Ind. 1993). "Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence

accompanied by a proper offer of proof, there is no basis for a claim of error." *Hollowell v. State*, 753 N.E.2d 612, 615-16 (Ind. 2001).

[22] "The trial court has broad discretion to rule on the admissibility of evidence." *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). "We review its rulings 'for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Id*. at 260 (quoting *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013)).

[23] "Admission of a deposition into evidence is reviewable only for an abuse of discretion." *Drummond v. State*, 467 N.E.2d 742, 746 (Ind. 1984). Our Supreme Court has "previously held that publication of a deposition is required in order to place the deposition before the court." *Id.* "The essence of the requirement is that because a party need not object to questions on the grounds of admissibility when the deposition is taken, the party can '[w]ait and make his objection at trial or hearing when the deposition is read into evidence or otherwise used.'" *Id.* (quoting *Augustine v. First Fed. Sav. & Loan Ass'n of Gary*, 270 Ind. 238, 241, 384 N.E.2d 1018, 1020 (1979)).

[24] Indiana Trial Rule 32(A) provides that "[a]t the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition. . ." Indiana Trial Rule 32(B)

additionally provides that "objection may be made at the trial or hearing to receiving in evidence any depositions or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." Therefore, when the deposition or parts of a deposition are read into evidence, an objection to the testimony must be made as if the witness were present at trial and testifying in person. Receipt of evidence by reading a deposition is akin to live testimony, and objections must be made.

[25] Alsip did not object to any of the questions and answers of the portions of Grice's deposition read by Banske's counsel, and later did not object to the admission of Grice's medical records of her treatment of Banske. As the record shows, clearly Judge Sedia expected Alsip's counsel to object to the portions of Grice's testimony where he felt that Grice was getting beyond the parameters of her qualifications and profession. Whether Judge Pera also had the same expectation or not, it was incumbent upon Alsip to object as needed. A party must make a contemporaneous objection at the time the evidence is offered. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). By making a contemporaneous objection, the party affords the trial court the opportunity to make a final ruling on the matter in the context in which the evidence is introduced. *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000). "The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal." *Id.*

[26] Here, in the absence of an objection, Alsip has waived all issues of the admissibility of the deposition testimony, save whether in Indiana as a matter of

law a naprapath may not testify as to the treatment of a patient. This appears to be an issue of first impression in Indiana.

[27] Indiana Evidence Rule 702 provides guidance in deciding this issue and reads as follows:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

[28] Because Indiana does not license naprapaths, and Grice was licensed to practice and treated Banske in Illinois, we turn to Illinois law to help understand the matter. The Naprapathic Practice Act is codified at Chapter 225 Illinois Compiled Statutes Annotated Act 63. In Illinois, where Grice is licensed to practice, naprapathy is a practice that is subject to regulation and control in the public interest by the Department of Financial and Professional Regulation ("the Department"). 225 Ill. Comp. Stat. Ann. 63/10 (West 2012) & 225 Ill. Comp. Stat. Ann. 63/5 (1993). No person is allowed to practice naprapathy in Illinois without a license issued by the Department. 225 Ill. Comp. Stat. Ann. 63/20. In order to obtain a license, a person must 1) be at least eighteen years of age and be of good moral character, 2) have graduated from a college level program of two years or its equivalent as approved by the Department, 3) have graduated from a curriculum in naprapathy as approved by the Department, 4)

have passed an examination to determine the person's fitness to practice naprapathy, and 5) have met all other requirements of the Act. 225 Ill. Comp. Stat. Ann. 63/17 (West 2012).

[29] The statutory definition of the practice of naprapathy in Illinois is as follows:

> Naprapathic practice means the evaluation of persons with connective tissue disorders through the use of naprapathic case history and palpation or treatment of persons by the use of connective tissue manipulation, therapeutic and rehabilitative exercise, postural counseling, nutritional counseling, and the use of the effective properties of physical measures of heat, cold, light, water, radiant energy, electricity, sound and air, and assistive devices for the purpose of preventing, correcting, or alleviating a physical disability.

> Naprapathic practice includes, but is not limited to, the treatment of contractures, muscle spasms, inflammation, scar tissue formation, adhesions, lesions, laxity, hypotonicity, rigidity, structural imbalance, bruising, contusions, muscular atrophy, and partial separation of connective tissue fibers.

> Naprapathic practice also includes: (a) performance of specialized tests and measurements, (b) administration of specialized treatment procedures, (c) interpretation of referrals from licensed physicians, dentists, and podiatric physicians, (d) establishment and modification of naprapathic treatment programs, and (e) supervision or teaching of naprapathy.

> Naprapathic practice does not include radiology, surgery, pharmacology, invasive diagnostic testing, or determination of a differential diagnosis; provided, however, the limitation on determining a differential diagnosis shall not in any manner limit a naprapath licensed under this Act from performing an evaluation authorized under this Act. A naprapath licensed under this Act who is not also licensed as a physical therapist under the Illinois Physical Therapy Act shall not hold himself or herself out as qualified to

provide physical therapy or physiotherapy services. Nothing in this Section shall limit a naprapath from employing appropriate naprapathic techniques that he or she is educated and licensed to perform. A naprapath shall refer to a licensed physician, dentist, or podiatric physician any patient whose medical condition should, at the time of evaluation or treatment, be determined to be beyond the scope of practice of the naprapath.

225 Ill. Comp. Stat. Ann. 63/15.

[30] The statutes regulating the practice of naprapathy reflect that Grice's testimony, which was expert but not scientific, could be helpful to assist the finder of fact's comprehension of the nature of the injuries Grice attempted to treat and the naprapathic methods used to treat the injuries.

[31] In *Kyowski v. Burns*, 388 N.E.2d 770 (Ill. App. Ct. 1979), the Illinois Court of Appeals addressed the trial court's decision to strike the testimony of a naprapath who treated a personal injury plaintiff on nine occasions after the date she was struck by the defendant's automobile. The plaintiff argued on appeal that the trial court erred by striking the testimony on the ground that the naprapath was not licensed. 388 N.E.2d at 1017. However, the record reflected that the testimony was excluded because the naprapath's treatment of the plaintiff's leg was not sufficiently connected to the alleged injuries from the accident. *Id*. at 1017-18. The Illinois Court of Appeals held that the trial court did not abuse its discretion in striking the testimony on the ground that without a connection between his treatment and the plaintiff's accident, the testimony was irrelevant. *Id*.

[32] Applying the rationale used in *Kyowski* to the facts of this case, we conclude that Grice's testimony about her treatment of Banske's injuries was sufficiently connected to Banske's slip and fall. Grice had treated Banske before and after her slip and fall and testified about the difference in Banske's health from the stand point of a naprapath. The trial court did not err as a matter of law by admitting Grice's testimony. The evidence was relevant and helpful to the jury.

[33] We save the resolution of the limitations on the testimony of a naprapath for another day.

## Conclusion

[34] In light of the foregoing, we affirm the decision of the trial court.

[35] Affirmed.

[36] Crone, J., and Bradford, J., concur.