

Aug 03 2018, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Johnston
Johnston & Johnston, PC
Wabash, Indiana

ATTORNEYS FOR APPELLEES –
STRYKER CORPORATION &
PATRICK REAGAN

Douglas B. Bates
Chelsea R. Stanley
Stites & Harbison PLLC
Jeffersonville, Indiana

ATTORNEY FOR APPELLEE –
BRAD BOLINGER

Matthew W. Melton
Norris Choplin Schroeder LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES –
JEFFREY M. SHEEDY, M.D.,
ROCHESTER ORTHOPEDICS,
P.C., & WOODLAWN HOSPITAL

Jason A. Scheele
Dustin J. Tirpak
Rothberg Logan & Warsco LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kathy Dotson,<br><br>*Appellant-Plaintiff,*<br><br> v. <br><br>Stryker Corporation, Brad Bolinger, Patrick Reagan, Jeffrey M. Sheedy, M.D., Rochester Orthopedics, P.C., and Woodlawn Hospital,<br><br>*Appellees-Defendants.* | August 3, 2018<br><br>Court of Appeals Case No. 18A-PL-220<br><br>Appeal from the Fulton Circuit Court<br><br>The Honorable A. Christopher Lee, Judge<br><br>Trial Court Cause No. 25C01-1610-PL-585 |

**Najam, Judge.**

# Statement of the Case

Kathy Dotson appeals the trial court's grant of summary judgment in favor of Stryker Corporation ("Stryker"), Brad Bolinger, Patrick Reagan, Dr. Jeffrey M. Sheedy, Rochester Orthopedics, P.C. ("Rochester"), and Woodlawn Hospital ("Woodlawn"). Dotson raises three issues for our review, which we consolidate and restate as the following two issues:

> 1.  Whether the trial court abused its discretion when it considered Dotson's deposition on summary judgment when Dotson had not reviewed or signed her deposition at the time of its designation.

> 2.  Whether the trial court erred when it entered summary judgment on the grounds that Dotson had filed her complaint outside of the relevant statute of limitations.

We affirm.

## Facts and Procedural History

In February of 2014, Dotson went to Woodlawn for knee-replacement surgery, which was to be performed by Dr. Sheedy. Shortly before she went under anesthesia, Dotson observed Bolinger and Reagan in her operating room with Dr. Sheedy and other Woodlawn medical personnel. Dotson could tell from their dress that Bolinger and Reagan were not medical personnel—they were in fact employees of Stryker, and they were present in the room ostensibly to discuss Stryker products with Dr. Sheedy as they related to knee replacements. Their presence in the operating room made Dotson uncomfortable, but before she could object she went under anesthesia.

More than two years later, on October 20, 2016, Dotson filed suit against Stryker, Bolinger, Reagan, Dr. Sheedy, Rochester, and Woodlawn. Her complaint alleged that the defendants had committed invasion of privacy when Bolinger and Reagan had been permitted in the operating room during her February 2014 knee-replacement surgery. Dotson further alleged that she had "first learned that [Bolinger and Reagan] were present during the left knee replacement surgery . . . after Defendant [Woodlawn had] mailed copies of [Dotson's] medical records to [her] counsel on or after October 21, 2014." Appellant's App. Vol. 2 at 18.

In January of 2017, Dr. Sheedy and Rochester moved for summary judgment on the grounds that, prior to her knee-replacement surgery, Dotson had signed

an authorization form in which she had "authorized the presence of product representatives . . . during her operation." *Id.* at 32. Dr. Sheedy and Rochester designated Dotson's signed authorization form along with their motion for summary judgment. The authorization form stated that Dotson "authorize[s] and directs Dr. Jeffrey Sheedy, D[.]O[.] and/or associates or assistants of his/her choice to perform the operation(s) or procedure(s) listed above including whatever incidental procedures and/or additional services, involving anesthesia, radiology, pathology, *product representatives*, use of biological agents and the like as may be advisable for my well-being." *Id.* at 39 (emphasis added). Dotson objected to the admissibility of the authorization form, and, in an affidavit she designated in response to the motion for summary judgment, Dotson denied having signed the document.

[6] In April of 2017, Dotson testified in a deposition. On the first day of her deposition, Dotson admitted that she knew at the time of her February 2014 surgery that Bolinger and Reagan were in her operating room, that they were conspicuously not medical personnel, and that their presence in the room made her uncomfortable. She further testified that she did not believe that she had given informed consent to their presence, and that she did not have the opportunity to object to their presence prior to the surgery because, shortly after she had observed Bolinger and Reagan, she was anesthetized.

[7] The first day of Dotson's deposition came to an abrupt end when she became ill, and the second day of Dotson's deposition did not occur until June of 2017. However, in May, between Dotson's two deposition days, Stryker filed its

motion for summary judgment. In addition to relying on the authorization form, Stryker also designated and relied on the first day of Dotson's deposition.[1] Relying on that evidence, Stryker argued that Dotson's complaint had been filed outside the relevant statute of limitations. On Dotson's motion, the trial court granted her an extension of time to August 11 to respond to Stryker's motion and designated evidence.

[8] Dotson's second, and last, deposition day occurred on June 5, 2017. During her testimony on that day, Dotson admitted that she had signed the authorization form. However, she testified that she had signed it only after her knee-replacement surgery had already occurred.

[9] On July 12, Reagan moved for summary judgment. Reagan argued both that Dotson had authorized his and Bolinger's presence when she had executed the authorization form and that the statute of limitations had lapsed prior to Dotson filing her complaint. Reagan designated the authorization form and both days of Dotson's deposition. Stryker, Dr. Sheedy, Rochester, and Woodlawn moved to join Reagan's motion for summary judgment, which the trial court permitted. Bolinger later filed his own motion for summary judgment in when he made the same arguments and designated the same evidence.

---

[1] Dr. Sheedy, Rochester, and Woodlawn—not Stryker—were the parties who had noticed Dotson's deposition. They did not file her original, signed, and sealed deposition with the trial court until October of 2017, though they had joined in filings that had been made prior to that date.

[10] Along with Reagan's motion for summary judgment and designation of evidence, Reagan and Stryker jointly moved to publish Dotson's deposition.[2] The trial court granted Reagan and Stryker's motion to publish the next day. Dotson continued to have until August 11 to respond to Stryker's motion for summary judgment and designated evidence, and Dotson's response to Reagan's motion and designated evidence was also due on August 11 pursuant to Indiana Trial Rule 56(C).[3]

[11] Thereafter, while the defendants' motions for summary judgment were still pending, Dotson moved for an enlargement of time to August 21 in which to read and sign her deposition transcript, which the trial court granted. On August 21, Dotson read and signed her deposition transcript but attached errata sheets in which she identified and corrected eleven errors in the transcript.[4]

---

[2] To be sure, Indiana Trial Rule 5(E)(2)(b) required the parties to obtain the court's permission to file the deposition with the court, but, once the court granted that permission and the deposition was filed, under Trial Rule 5(E)(5) the deposition was published. Ind. Trial Rule 5(E)(2)(b) ("No deposition . . . shall be filed with the Court unless . . . [a] party desires to use the deposition . . . for evidentiary purposes . . . and the Court . . . orders the filing of the original."); T.R. 5(E)(5) ("The filing of any deposition shall constitute publication."); *see* 22 Ind. Prac. *Civ. Trial Prac.* § 22.21 (2d ed. June 2018) ("The requirement for publication by separate motion was eliminated by the Indiana Supreme Court's 1991 amendment" to our trial rules); *see also Walnut Creek Nursery, Inc. v. Banske*, 26 N.E.3d 648, 653 (Ind. Ct. App. 2015) (noting that "publication of a deposition is required in order to place the deposition before the court," and that "[t]he essence of the requirement is that[,] because a party need not object to [deposition] questions on the grounds of admissibility" during the deposition, "the party can wait and make his objection at [the] trial or hearing when the deposition is read into evidence or otherwise used.") (quoting *Drummond v. State*, 467 N.E.2d 742, 746 (Ind. 1984)).

[3] Bolinger filed his motion for summary judgment and designated evidence on August 15, which made Dotson's response to Bolinger due no later than September 14.

[4] After she had read and signed the deposition transcript, and after she had subsequently moved to strike the defendants' designated versions of her deposition, Dr. Sheedy, Rochester, and Woodlawn—the parties who had noticed Dotson's deposition—moved to publish the signed deposition such that it would "supplant . . . the materials designated in support of all Defendants' dispositive motions." Appellant's App. Vol. 3 at 139-40. Both days of Dotson's deposition, as well as her signature and errata sheets, were filed with

None of the errors identified and corrected by Dotson related to her observation of Bolinger and Reagan in the operating room or her immediate suspicion that they were not medical personnel. However, she did clarify that, when she had signed the authorization form after her surgery, she "was in a lot of pain and woozy from the surgery and all of the medication they had given me." Joint Appellees' App. Vol. 2 at 12.

[12] After Dotson had read, signed, and corrected her deposition transcript, on September 28 she moved for the first time to strike the defendants' designation of her deposition in support of their respective motions for summary judgment. According to Dotson, her deposition was inadmissible because, "[w]hen Defendants filed their motions for summary judgment, the time for Kathy Dotson to make changes and sign the deposition had not expired," and none of the defendants redesignated Dotson's deposition after she had read, signed, and corrected it. Appellant's App. Vol. 3 at 119. That same day, Dotson filed a "supplemental memorandum in response to defendants' motion[s] for summary judgment." Appellant's App. Vol. 2 at 12. The defendants moved to strike Dotson's September 28 filings as untimely.

---

the court as exhibits to the renewed motion to publish. Although the record on appeal does not show that the trial court ruled on the renewed motion to publish or otherwise affirmatively ordered that the sealed and signed, original deposition be opened and filed, neither does the record show that Dotson objected to the admissibility of the signed deposition, and she does not suggest on appeal that the signed deposition has been improperly included in the record on appeal. *See* Appellant's App. Vol. 2 at 13-14; Ind. Appellate Rule 46(A)(8)(a); *see also Walnut Creek Nursery*, 26 N.E.3d at 653 (recognizing that publication of a deposition is required to put the deposition before the court, but that the essence of the publication requirement is to allow parties to object to the deposition's admissibility).

[13]    In December, the trial court held a hearing on the pending summary judgment motions.[5] Following that hearing, the court entered an order in which it: granted the defendants' motion to strike Dotson's supplemental memorandum in response to the defendants' motions for summary judgment; denied Dotson's motion to strike the designated version of her deposition; and granted summary judgment to each defendant on the grounds that Dotson's complaint "is time barred in that it was not filed within the applicable statute of limitations." *Id.* at 146-47. This appeal ensued.

# Discussion and Decision

### *Issue One: Admissibility of the Designated Deposition*

[14]    On appeal from the trial court's entry of summary judgment, Dotson first argues that the trial court abused its discretion when it considered her designated deposition.[6] Specifically, Dotson contends that her designated deposition was inadmissible because she had not yet read and signed the deposition transcript when the defendants designated it in support of their respective motions for summary judgment.[7] Although the deposition was

---

[5] The transcript of the trial court's summary judgment hearing has not been included in the record on appeal. Thus, we do not consider Dotson's comments in her Reply Brief with respect to statements or objections purportedly made at that hearing.

[6] Dotson does not delineate between the one-day, unsigned version of her deposition designated by Stryker and the two-day, unsigned version designated by Reagan, which designation the other defendants later joined, and so neither do we. The distinction, at least as it relates to the statute of limitations issue, is not relevant to this appeal.

[7] In their joint brief on appeal, Stryker and Reagan suggest that Dotson did not timely object to their designation of her deposition, or to either of the motions to publish her deposition, and thus she cannot be heard to complain about the trial court's reliance on the designated deposition. The record on appeal appears

designated on summary judgment rather than published at trial, the trial court still had "broad discretion in ruling" on the admissibility of the evidence. *Moryl v. Ransone*, 4 N.E.3d 1133, 1138 n.5 (Ind. 2014). An abuse of that discretion "occurs only where the trial court's decision is clearly against the logic and effect of the facts and circumstances." *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

[15] Indiana Trial Rule 30 discusses depositions upon oral examination. In relevant part, Rule 30 states:

> (1) When the testimony is fully transcribed, *the deposition shall be submitted to the witness for reading and signing* and shall be read to or by him, unless such reading and signing have been waived by the witness and by each party. . . .
>
> (2) If the witness desires to change any answer in the deposition submitted to him, each change, with a statement of the reason therefor, shall be made by the witness on a separate form provided by the [deposing] officer, shall be signed by the witness

---

to support Stryker and Reagan's position. The trial court had given Dotson until August 11 to respond to Stryker's designation of her deposition, which was the same date she had under Trial Rule 56(C) to respond to Reagan's designation. She did not do so. She also did not timely respond to Bolinger's similar designation, and she did not specifically object to either the July or the October motions to publish her deposition.

That said, while the trial court struck Dotson's September 28 supplemental response to the summary judgment motions as untimely, the court *did not* grant the defendants' request to strike Dotson's September 28 objection to the designated deposition even though her objection was similarly untimely. Instead, the trial court denied her objection on the merits, and Stryker and Reagan do not argue on appeal that the trial court's decision to deny Dotson's objection on the merits was an abuse of the court's discretion. *See* App. R. 46(A)(8)(a). Accordingly, we decline to review the trial court's judgment under a theory of waiver and instead review it on the merits. *E.g., Gr. J. v. Ind. Dep't of Child Servs. (In re D.J.)*, 68 N.E.3d 574, 580 (Ind. 2017) (noting "our preference for deciding cases on their merits"). We also decline to review Dotson's argument that the trial court abused its discretion when it struck her supplemental response.

and affixed to the original deposition by the officer. A copy of such changes shall be furnished by the officer to each party.

(3) If the reading and signing have not been waived by the witness and by each party the deposition shall be signed by the witness and returned by him to the officer within thirty (30) days after it is submitted to the witness. If the deposition has been returned to the officer and has not been signed by the witness, the officer shall execute a certificate of that fact, attach it to the original deposition and deliver it to the party taking it. *In such event, the deposition may be used by any party with the same force and effect as though it had been signed by the witness.*

(4) In the event the deposition is not returned to the officer within thirty (30) days after it has been submitted to the witness, the reporter shall execute a certificate of that fact and cause the certificate to be delivered to the party taking it. *In such event, any party may use a copy of the deposition with the same force and effect as though the original had been signed by the witness.*

Ind. Trial Rule 30(E) (emphases added). Trial Rule 32 adds the following relevant language with respect to the effect of certain errors and irregularities in depositions:

Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with by the officer under Rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.

T.R. 32(D)(4).

[16]    Our Supreme Court has recognized that, in light of the language of our trial rules, "the lack of signature" is not necessarily "an impediment to admission" of a deposition. *Drummond v. State*, 467 N.E.2d 742, 746 (Ind. 1984). In *Drummond*, for example, the witness had "the opportunity to read and sign the transcribed depositions" but, "for unknown reasons[, she] declined." *Id.* The court held that, "[u]nder these circumstances," the trial court did not abuse its discretion when it admitted the unsigned deposition into evidence. *Id.*

[17]    Similarly, we have recognized that, while our trial rules "require[] that the witness be permitted to review the transcript of his deposition and then sign it," the rules nonetheless "provide for the use of a deposition at trial even though it is unsigned." *Gallagher v. State*, 466 N.E.2d 1382, 1387-88 (Ind. Ct. App. 1984). In *Gallagher*, we held that "the absence of both a signature and formal waiver of signature does not necessarily preclude the admission of a deposition . . . ." *Id.* at 1388. We affirmed the admission of the deposition in *Gallagher* despite such irregularities in part because the complaining party "never argue[d] that any inaccuracy exists in the substance of the deposition." *Id.*

[18]    Dotson has not demonstrated that the trial court's reliance on the designated deposition was so unreasonable as to constitute an abuse of the court's discretion. The Court in *Drummond* held that the trial court did not abuse its discretion when it relied on an unsigned deposition after the witness had been given the opportunity to sign the deposition transcript but did not do so. Here, while the deposition was unreviewed and unsigned at the time of its designation, there is no dispute that Dotson was subsequently given the

opportunity to read and sign it, which she did. And she did so well before the court's hearing and order on the motions for summary judgment, even if the trial court did not rely on the signed deposition when it entered its order. That is, by the time the trial court actually heard and ruled on the motions for summary judgment, Dotson's formal approval of the original deposition transcript was not an issue.

[19] And the substantive accuracy of the designated deposition, at least as it related to the statute of limitations issue, was not seriously in dispute despite the fact that the designated version had been prematurely filed with the court.[8] Just as the complaining party in *Gallagher* was unable to demonstrate any inaccuracy in the substance of the unsigned deposition, Dotson also has not shown any inaccuracy in the designated deposition insofar as it was used to demonstrate a lapse in the statute of limitations. Despite her bald assertions to the contrary in her brief on appeal, our review of the designated deposition and her subsequent errata sheets reveal that her corrections had no bearing on her testimony as it related to the statute of limitations issue.

---

[8] Stryker and Reagan argue on appeal that the signed deposition "was properly before the trial court for consideration prior to its ruling on the motions for summary judgment." Stryker and Reagan's Brief at 17-19. They are incorrect. The signed deposition was not included in the designated materials, and the trial court did not rule on the October 2017 request to "supplant" the designated versions of the deposition with the signed deposition. *See* Appellant's App. Vol. 2 at 13-14. Rather, we consider the substance of the signed deposition only insofar as it relates to Dotson's argument that the trial court unreasonably relied on the designated but unsigned deposition.

[20] Still, Dotson argues that, on summary judgment, the trial court "is limited to the designated evidence." *See Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). That is a correct statement, but Dotson has not shown either that the trial court did otherwise or that, if it did, the court committed reversible error in doing so. Again, the designated deposition and the signed deposition were substantively identical on the dispositive statute of limitations issue.

[21] Dotson also argues that it would be "unjust to allow the moving party to designate evidence . . . if the evidence was not admissible when it was designated because it would require the non-moving party to speculate whether it would be admissible when responding . . . ." Appellant's Br. at 18. We cannot agree. Parties frequently consider and plan for the likelihood that arguably inadmissible evidence might nonetheless get into the record. Moreover, Dotson's argument that the designated deposition should be inadmissible based solely on the timing of her signature to it seeks to elevate form over substance, which we will not do. *E.g.*, *Moryl*, 4 N.E.3d at 1139. We cannot say that the trial court abused its discretion when it denied her motion to strike the designated deposition.

### Issue Two:  Entry of Summary Judgment

[22] We thus turn to Dotson's challenge to the entry of summary judgment. As our Supreme Court has stated:

> This Court reviews summary judgment orders *de novo*. Summary judgment is appropriate if the designated evidence shows there is no genuine issue as to any fact material to a particular issue or

claim, and the moving party is entitled to judgment as a matter of law. In viewing the matter through the same lens as the trial court, we construe all designated evidence and reasonable inferences therefrom in favor of the non-moving party. Legal questions, such as contract interpretation, are well-suited for summary judgment. The party appealing the trial court's summary judgment determination bears the burden of persuading us the ruling was erroneous. Nonetheless, we "carefully scrutinize[] the trial court's decision to assure that the party against whom summary judgment was entered was not improperly prevented from having its day in court."

*Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 912-13 (Ind. 2017) (citations omitted; alteration original to *Ryan*).

[23] Dotson asserts that the trial court erred when it entered summary judgment because the designated evidence creates a genuine issue of material fact with respect to whether the statute of limitations had lapsed prior to the date on which Dotson filed her complaint.[9] In particular, Dotson asserts that her complaint creates a genuine issue of material fact on this issue because she stated in her complaint that she did not know that Bolinger and Reagan were present in the operating room until October 21, 2014, which was one day less than two years before she filed her complaint. She also argues that "[i]t is reasonable to infer" from her deposition that "Dotson was unconscious during

---

[9] Throughout her brief on this issue, Dotson repeatedly refers to and relies on the authorization form, her deposition testimony with respect to that form, and an affidavit she had executed. But we agree with Stryker and Reagan that that evidence is neither here nor there on the question of whether the statute of limitations had lapsed prior to when Dotson filed her complaint.

the surgery and had no way of knowing who was present in the operating room . . . ." Appellant's Br. at 22.

[24] The parties do not dispute that Dotson's claim for invasion of privacy was controlled by a two-year statute of limitations. *See* Ind. Code § 34-11-2-4(a) (2017); *Johnson v. Blackwell*, 885 N.E.2d 25, 31 (Ind. Ct. App. 2008). "In general, the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind. 2008) (quotation marks omitted).

[25] Dotson's deposition shows that on February 25, 2014, she actually knew that Bolinger and Reagan were in her operating room, though she did not know who they were.[10] She testified that she had observed Bolinger and Reagan in her operating room with Dr. Sheedy and other Woodlawn medical personnel prior to the administration of her anesthesia. She further testified that it was immediately apparent to her in the operating room that Bolinger and Reagan were not medical personnel. And she testified that their presence in the operating room made her uncomfortable.

---

[10] That Dotson "did not determine until over two years later the actual identity of the part[ies] causing the injury did not suspend the running of the statute of limitations." *Richards-Wilcox, Inc. v. Cummins*, 700 N.E.2d 496, 498 (Ind. Ct. App. 1998).

[26] Accordingly, the designated evidence establishes that the statute of limitations for Dotson's claim for invasion of privacy began to run on February 25, 2014. However, Dotson did not file her complaint until more than two years later, on October 20, 2016. Thus, her complaint was barred by the statute of limitations.

[27] Further, we reject Dotson's argument that her contrary statement in her complaint with respect to when she had learned that Bolinger and Reagan were present in the operating room creates a genuine issue of material fact. *See* T.R. 56(E) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading . . . ."). We also reject Dotson's assertion that her deposition lends itself to an inference that she did not actually observe Bolinger and Reagan in the operating room because she had been anesthetized. Dotson's testimony is expressly to the contrary.[11]

[28] In sum, the designated evidence demonstrates as a matter of law that the statute of limitations had lapsed before Dotson filed her complaint. Thus, we affirm the trial court's entry of summary judgment for each of the defendants.

[29] Affirmed.

Crone, J., and Pyle, J., concur.

---

[11] Insofar as Dotson has attempted to argue a theory of concealment on appeal, that argument is not supported by cogent reasoning or citations to the record, and we do not consider it. App. R. 46(A)(8)(a).